IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

NATIONAL UNION FIRE )
INSURANCE COMPANY OF )
PITTSBURGH, PA, a Pennsylvania )
Corporation, )
)
Plaintiff, )
)
v. )
)
F. VICINO DRYWALL II, INC.; F. )
VICINO DRYWALL, INC.; and F. )
VICINO AND COMPANY, INC., )
)
Defendants. )
)

FILED by ___VT___ D.C.
ELECTRONIC

Feb. 24, 2010

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

Case No.
**10-CV-60273-Gold-McAliley**

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, files this Complaint for Declaratory Judgment against Defendants, F. VICINO DRYWALL II, INC.; F. VICINO DRYWALL, INC.; and F. VICINO AND COMPANY, INC., and alleges as follows:

### INTRODUCTION

1. National Union Fire Insurance Company of Pittsburgh, PA ("National Union") seeks a declaration under 28 U.S.C. §§ 2201-2202 and the substantive law of Florida that it owes no duty to defend or indemnify Defendants F. Vicino Drywall II, Inc.; F. Vicino Drywall, Inc.; and F. Vicino and Company, Inc. under three liability insurance policies issued by National Union with respect to claims related to allegedly defective drywall installed by Defendants.

2. There is an actual, present, and bona fide controversy between the parties concerning the alleged coverage obligations of National Union to defend and indemnify Defendants with respect to the claims involving allegedly defective drywall.

### PARTIES

3. National Union is a Pennsylvania corporation with its principal place of business in New York.

4. F. Vicino Drywall II, Inc.; F. Vicino Drywall, Inc.; and F. Vicino and Company, Inc. are Florida corporations with their principal places of business in Florida.

### JURISDICTION AND VENUE

5. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 2201 and 1332, as amended. This matter involves a dispute between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) and (c) because one or more of the defendants resides and conducts business in this district, and a substantial part of the events giving rise to this claim occurred in this district.

7. National Union is entitled to declaratory relief under 28 U.S.C. § 2201 and the substantive law of Florida.

### GENERAL ALLEGATIONS

A. **The Defective Drywall Claims**

8. In 2009 and 2010, F. Vicino and Company, Inc. and F. Vicino Drywall, Inc. were named in approximately seventeen lawsuits (referred to herein as the "Underlying Lawsuits") related to allegedly defective Chinese drywall. (*See, e.g.,* **Exhibit A**)

9. The plaintiffs in the Underlying Lawsuits generally alleged that Defendants installed defective drywall that emits a noxious, "rotten egg-like" odor, and corrodes residential wiring, appliances, and other metal components causing the malfunction of air conditioners, refrigerators, and other household items. Plaintiffs also allege that the drywall caused allergic reactions, coughing, sinus and throat infection, eye irritation, breathing hazards, and other health concerns.

10. The Complaints in the Underlying Lawsuits generally contain counts against F. Vicino and Company, Inc. and F. Vicino Drywall, Inc. for negligence, strict liability, and fraudulent concealment relating to allegedly defective Chinese drywall.

11. The Complaints filed in the Underlying Lawsuits generally allege:

   a. The drywall in Plaintiffs' homes was made with waste material from scrubbers on coal fired power plants, also called "fly ash." These materials can leak into the air and emit one of several sulfur compounds including sulfur dioxide and hydrogen sulfide.

   b. When combined with moisture in the air, these sulfur compounds create sulfuric acid. Sulfuric acid has been known to dissolve solder joints, corrode coils and copper tubing – creating leaks, blackening coils and causing air conditioners and refrigerators to fail. Sulfuric acid has also been shown to corrode coils, it can harm metals such as chrome, brass and silver.

   c. As a result, the Plaintiffs have suffered, and continue to suffer damages as a result of the defective drywall and the corrosive effects of the sulfur compounds. These damages include, but are not limited to, the costs of inspection, the costs and expenses necessary to replace and remove the defective drywall, adjoining components, electrical wiring, interior finishes and personal property.

**B.   Drywall Studies**

12. Beginning in or about 2009, various Federal and State agencies, as well as private testing firms, analyzed drywall and reported that certain drywall, including drywall manufactured in China, contains and emits sulfur-related chemical compounds

3

that are associated with corrosion of metal, damage to other property, and complaints of odors and adverse health effects.

15. In October 2009, the United States Consumer Product Safety Commission (CPSC) released several reports concerning testing on Chinese and domestically produced drywall. Those reports concluded that the Chinese drywall contained higher concentrations of elemental sulfur compared to the domestic drywall. Further, the Chinese drywall emitted higher levels of total volatile sulfur compounds than did the domestic drywall.

14. On or about November 23, 2009, the CPSC released reports regarding additional drywall testing. The CPSC reported that in a fifty-one home study, hydrogen sulfide gas was detected in homes with defective drywall in concentrations that were statistically higher than in homes without such drywall. Further, examination of copper wiring in homes containing defective drywall exhibited corrosion.

C.  **National Union's Policies**

15. National Union issued the following umbrella policies (referred to collectively herein as the "Policies") to Defendant F. Vicino Drywall II, Inc. as named insured: National Union policies 3140702 (October 29, 2003 to October 29, 2004), 2963978 (October 28, 2004 to October 28, 2005), and 9035995 (October 28, 2005 to October 28, 2006). Copies of the Policies are attached hereto as **Exhibits B, C, and D**, respectively.

16. Defendants are not entitled to coverage under the Policies with respect to claims arising from allegedly defective drywall installed in the homes of the plaintiffs in the Underlying Lawsuits unless Defendants first satisfy all conditions for coverage and coverage is not otherwise excluded.

17. Any insurance provided by the Policies is provided on an excess basis, and National Union has reserved its rights to deny coverage pursuant to the Policies.

18. The Total Pollution Exclusion Endorsement attached to each policy bars coverage for "bodily injury" and "property damage," if any, associated with defective drywall, arising from the actual, alleged, or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants," as that term is defined in each policy.

19. Coverage is barred to the extent that a claimant seeks relief from an insured that does not constitute "damages," as that term is used in the Policies. Equitable relief, including medical monitoring, or economic losses associated with defective drywall, does not constitute covered damages within the Policies.

20. Coverage is barred for damages that do not constitute "bodily injury" or "property damage," as those terms are defined in the Policies. The mere presence of defective drywall is not "property damage," and there is no coverage under the Policies for any costs arising out of the process of repairing or replacing the drywall.

21. Coverage is barred for "bodily injury" or "property damage" associated with defective drywall that is not the result of an "occurrence," as that term is defined in the Policies.

22. Coverage is barred to the extent that "bodily injury" or "property damage," if any, associated with defective drywall did not occur during the policy period at issue.

23. Coverage is barred for "bodily injury" or "property damage," if any, for which the insured is obligated to pay damages associated with defective drywall by reason of the assumption of liability in a contract or agreement.

24. Coverage is barred for "property damage," if any, associated with defective drywall to property an insured owns, rents, or occupies.

25. Coverage is barred for "property damage," if any, associated with defective drywall to an insured's work that is included in the "products completed operations hazard," as defined in the Policies.

26. Coverage is barred to the extent that any indemnity for "property damage" or "bodily injury" does not exceed the applicable underlying insurance coverage.

27. Coverage is barred under each Policy as to any person or entity that is not an insured under that Policy.

28. Coverage is barred under each Policy to the extent that the insured expected or intended to cause the "property damage" or "bodily injury" alleged in the Complaints in the Underlying Lawsuits.

29. Coverage is limited to the extent that any "bodily injury" or "property damage" constitutes a single "occurrence." "Bodily injury" or "property damage," if any, associated with defective drywall that is continuing or progressive over any length of time is one "occurrence" that occurs only when the "bodily injury" or "property damage" or both first commenced.

30. Coverage is barred for "property damage," if any, to "impaired property," as defined in the Policies, and to property that has not been physically injured, associated with defective drywall, arising out of a defect in an insured's product or work, or a delay or failure by an insured or anyone acting on an insured's behalf to perform a contract or agreement in accordance with its terms.

**D.     National Union's Communications with Defendants**

31.     National Union issued a reservation of rights letter to Defendants advising Defendants that National Union was reserving its rights to decline coverage. The letter referred to the policy terms on which National Union may rely to decline coverage, including the terms noted above.

## COUNT I
## DECLARATORY RELIEF
(All Defendants)

32.     National Union incorporates the allegations set forth in paragraphs 1 through 31.

33.     A controversy exists between National Union and Defendants regarding the obligation of National Union to defend and indemnify Defendants under the Policies with respect to claims arising from allegedly defective drywall installed in the homes of the plaintiffs in the Underlying Lawsuits.

34.     The interpretation of the applicable terms of each of the Policies at issue is governed by Florida law.

35.     Coverage is limited or eliminated by terms of each of the Policies for the alleged damages for which Defendants have or will seek coverage under each Policy.

36.     Accordingly, National Union has no duty to defend or indemnify Defendants in the Underlying Lawsuits under any of the Policies.

37.     The Defendants have not yet requested payment or reimbursement from National Union of defense costs that Defendants have incurred to date in defending the Underlying Lawsuits. To the extent that National Union does incur any such defense costs in the future, it will be entitled to reimbursement of those defense costs from each

Defendant to the extent that National Union has no coverage obligations to Defendants under the Policies.

**WHEREFORE**, National Union requests the following declaratory relief:

1. A judgment in favor of National Union declaring that National Union has no duty under the Policies to defend or indemnify Defendants with respect to any claims or damages arising from allegedly defective drywall installed at the homes of the plaintiffs in the Underlying Lawsuits; and

2. Such other relief as the Court may deem just and proper.

DATED this 23rd day of February, 2010

Respectfully submitted,

/s/ Cindy L. Ebenfeld
Cindy L. Ebenfeld, Esq.
Florida Bar No. 980579
Rick A. Piccolo, Esq.
Florida Bar No. 511330
HICKS, PORTER, EBENFELD & STEIN, P.A.
11011 Sheridan Street, Suite 104
Cooper City, Florida 33026
Tel: (954) 624-8700
Fax: (954) 624-8064
cebenfeld@mhickslaw.com
rpiccolo@mhickslaw.com
*Co-Counsel*

Joseph A. Hinkhouse, Esq.
Richard A. Hodyl, Esq.
Joshua A. Boggioni, Esq.
HINKHOUSE WILLIAMS WALSH LLP
180 N. Stetson Avenue, Suite 3400
Chicago, Illinois 60601
Tel: (312) 784-5400
Fax: (312) 784-5499
jhinkhouse@hww-law.com
rhodyl@hww-law.com
jboggioni@hww-law.com
*Counsel for Plaintiff*

4810-5347-0725, v. 2