**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

NATIONAL UNION FIRE INSURANCE )
COMPANY OF PITTSBURGH, PA, a )
Pennsylvania Corporation, )
 )
 )
      Plaintiff, )
 )
 )
      v. )  Case No. 0:10-cv-60273-ASG
 )
F. VICINO DRYWALL II, INC.; F. )
VICINO DRYWALL, INC.; and F. )
VICINO AND COMPANY, INC., )
 )
 )
      Defendants. )

---

**PLAINTIFF'S MOTION TO ALTER OR AMEND THE COURT'S ORDER GRANTING DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION, WITH INCORPORATED MEMORANDUM OF LAW**

Plaintiff, National Union Fire Insurance Company of Pittsburgh, PA, ("National Union"), pursuant to Federal Rule of Civil Procedure 59(e), files this Motion to Alter or Amend the Court's Order Granting Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction; Denying Motion for Summary Judgment and Motion for Stay as Moot; Administratively Closing Case, and in support states as follows:

**I.  BACKGROUND**

This case arises out of a dispute between National Union and Defendants concerning whether National Union owes Defendants a duty to defend under three commercial umbrella liability insurance policies to F. Vicino Drywall II, Inc. with aggregate policy periods between October 29, 2003 and October 28, 2006. Each policy contains a Total Pollution Exclusion Endorsement barring coverage for "bodily injury" or "property damage" "arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of Pollutants." "Pollutants" is a defined term in the policies.

Florida state and federal courts, including the Florida Supreme Court and the U.S. Court of Appeals for the Eleventh Circuit, have held the pollution exclusion to be unambiguous.

The National Union policies are first layer excess policies, directly above Defendants' underlying coverage of $1 million per occurrence and $2 million aggregate. When National Union filed this action, Defendants had been named in approximately seventeen lawsuits. That number has since grown to more than thirty lawsuits ("Underlying Lawsuits"), certain of which involve multiple dwellings.

Over the course of 2009 and 2010, Defendants have informed National Union of the Underlying Lawsuits as well as additional claims against Defendants that have not yet entered litigation. The Underlying Lawsuits contain allegations of property damage and bodily injury allegedly caused by the release of noxious gases from allegedly defective imported drywall. On February 24, 2010, National Union filed this action seeking a declaratory judgment under 28 U.S.C. § 1332 and pursuant to both 28 U.S.C. § 2201 and the substantive law of Florida that it owes no duty to defend or indemnify Defendants in the Underlying Lawsuits. (DE 1)

On June 21, 2010, National Union filed a Motion for Summary Judgment, seeking judgment as a matter of law that the claims alleged in the Underlying Lawsuits were barred by the Total Pollution Exclusion and, therefore, National Union does not owe Defendants a duty to defend in the Underlying Lawsuits. (DE 21)  On August 18, 2010, before responding to National Union's Motion for Summary Judgment, Defendants moved pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(c), and 12(h)(2)(B) for entry of judgment on the pleadings, or alternatively, to dismiss for failure to allege a justiciable controversy necessary to state a claim for declaratory relief. On November 29, 2010, the Court entered an Order granting Defendants' motion to dismiss for lack of subject matter jurisdiction under 28 U.S.C. § 2201, the federal Declaratory Judgment Act. (DE 76)

## II.     INTRODUCTION

In this Court's November 29, 2010 Order granting Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction, the Court considered only whether National Union presented a case or controversy under the federal Declaratory Judgment Act without any consideration of the applicable Florida Declaratory Judgment Act. *See* Order at p. 5.

Specifically, the Court stated that "[s]ubject matter jurisdictional disputes in federal court that concern a justiciable 'case or controversy' are to be resolved under federal law, not state law," and declared that it would "primarily look to the Federal Declaratory Judgment Act and binding case law from the U.S Supreme Court and the Eleventh Circuit." *Id.*

Although National Union sought relief under the federal Declaratory Judgment Act, 28 U.S.C. § 2201, it did not do so exclusively. In its complaint and subsequent filings, National Union also sought relief under "the substantive law of Florida," (the governing law in this diversity action) including the Florida Declaratory Judgment Act, Fla. Stat. § 86.01 et seq. *See* Complaint, DE 1, at ¶¶ 1, 7; Response in Opposition to Defendants' Motion for Judgment on the Pleadings, or in the Alternative, to Dismiss for Lack of Subject Matter Jurisdiction, DE 51, at p. 7 n.4. National Union respectfully submits that the Court erred by dismissing this action without consideration of the Florida Declaratory Judgment Act, under which a proper controversy undoubtedly exists. The express language of the statute as well as case law interpreting it are clear that the Florida Declaratory Judgment Act is substantive and therefore is to be considered in place of the federal Declaratory Judgment Act in determining whether National Union's action presents a case or controversy.

The clear purpose of the Florida Declaratory Judgment Act—to settle and to afford relief from insecurity and uncertainty with respect to rights, status, and other equitable or legal relations—would be accomplished by permitting National Union's action to proceed. National Union filed this action in good faith to obtain a prompt determination of the parties' rights and duties under the insurance policies at issue. The Court's dismissal of this action runs counter to the stated public policy of the Florida Declaratory Judgment Act and leaves National Union and Defendants in a state of uncertainty regarding the parties' respective rights and responsibilities under the policies. The Court's Order prevents the parties from obtaining an expeditious coverage determination prior to the inevitable exhaustion of Defendants' underlying coverage, and leaves National Union in the undesirable position of either paying claims it believes are not covered or being faced with allegations of bad faith. *See Higgins v. State Farm Fire and Casualty Co.*, 894 So. 2d 5, 15 (Fla. 2005) (considering the Florida Declaratory Judgment Act and inquiring: "Why should an insurer be placed in a position of either paying what it believes to be an uncovered claim

or being in jeopardy of a bad faith judgment for failure to pay a claim?"); *State Farm Auto. Ins. Co. v. LaForet*, 658 So. 2d 55, 63 (Fla. 1995) (holding that one of the factors to be considered in a bad faith claim is "the efforts or measures taken by the insurer to resolve the coverage dispute promptly or in such a way as to limit any potential prejudice to the insureds"). National Union, therefore, requests the Court to vacate its Order and reopen the case at bar.

### III.  STANDARD

Courts have recognized three grounds for motions for reconsideration under Federal Rule of Civil Procedure 59(e): (1) an intervening change in controlling law, (2) the availability of new evidence, and (3) a clear error in the court's previous ruling. *See Ray v. Equifax Info. Servs., LLC*, 327 Fed. App'x 819, 823 (11th Cir. 2009); *Leonard v. Astrue*, 487 F. Supp. 2d 1333, 1341 (M.D. Fla. 2007). A motion for reconsideration is appropriate where, as here, "the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *In re BDC 56 LLC*, 330 F.3d 111, 123 (2d Cir. 2003) (abrogated on other grounds).

### IV.  ARGUMENT

#### A. The Florida Declaratory Judgment Act Is Substantive Law That Must Be Applied In This Diversity Action, And The Court's Reliance Solely On The Federal Declaratory Judgment Act Was Misplaced

The Court has subject matter jurisdiction of this action under 28 U.S.C. § 1332. Under § 1332, a federal court has subject matter jurisdiction over a matter in which there exists: (1) complete diversity of citizenship between the plaintiff and defendant, (2) an amount in controversy greater than $75,000, and (3) a controversy between the parties under the state substantive law at issue. *See* 28 U.S.C. § 1332; *World Harvest Church, Inc. v. Guideone Mut. Ins. Co.*, 586. F.3d 950, 956-57 (11th Cir. 2009). It is undisputed that the first two elements are satisfied here. The third element is also satisfied because this diversity action is governed by Florida substantive law and, as established herein, the Florida Declaratory Judgment Act ("Florida Act") is substantive law that is applied liberally to provide relief to parties such as National Union from insecurity and uncertainty with respect to rights, status, and other equitable or legal relations. *See Nebula Glass Int'l, Inc. v.*

*Reichhold, Inc.*, 454 F.3d 1203, 1212 (11th Cir. 2006) (holding that in a diversity case, a court must apply the substantive law of the state), citing *Erie R.R. Co. v. Tompkins,* 304 U.S. 64 (1938).  The Court, therefore, must look to the Florida Declaratory Judgment Act to determine whether a ripe controversy exists.

1. *The Florida Declaratory Judgment Act is substantive on its face.*

The Florida Act was expressly enacted by the Florida legislature as substantive law. The Florida Act plainly states: "This chapter is **declared to be substantive** and remedial." Fla. Stat. § 86.101 (emphasis added).  The statute further provides that "[i]ts purpose is to settle and to afford relief from insecurity and uncertainty with respect to rights, status, and other equitable or legal relations and is to be liberally administered and construed." *Id*.  The legislature's unambiguous instruction that the Florida Act is "to be substantive" should be the end of the analysis.  A basic tenet of statutory interpretation is that a court should always begin by considering the language of the statute itself.  *U.S. v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989).  "As a general rule, if the language of the statute is plain, then our interpretative function ceases and we should 'enforce the statute according to its terms.'" *In re Griffith*, 206 F.3d 1389, 1393 (11th Cir. 2000).  The Eleventh Circuit has also instructed courts to "begin by examining the language of the statute itself" and that "[a]bsent clearly expressed legislative intent to the contrary, that language is conclusive." *In re St. Laurent, II*, 991 F.2d 672, 678 (11th Cir. 1993).  Both the language of and the legislative intent behind the Florida Act are clear and conclusive – the act is substantive and should be administered and construed liberally. *See* Fla. Stat. § 86.101.

Not only is the Florida Act expressly substantive on its face, but the purpose of the Act further makes clear its substantive nature.  For example, in *Haven Federal Savings & Loan Association v. Kirian*, 579 So. 2d 730, 732 (Fla. 1991), the Florida Supreme Court concluded that whether a statute "concerns matters of substantive law … is within the legislature's domain."  The court defined substantive law "as that part of the law which creates, defines, and regulates rights, or that part of the law which courts are established to administer."  *Id*.  The court further stated that substantive law "includes those rules and principles which fix and declare the primary rights of individuals with respect toward their persons and property." *Id*. citing *Adams v. Wright*, 403 So. 2d 391 (Fla. 1981) (finding a

remedial statute to be substantive).  The stated purpose of the Florida Act, *i.e.*, to settle and to afford relief from insecurity and uncertainty with respect to rights, status, and other equitable or legal relations, is wholly consistent with the Florida Supreme Court's definition of substantive rights:  to "fix and declare the primary rights of individuals."

### 2. *Florida state and federal courts have interpreted the Florida Declaratory Judgment Act as substantive law.*

Consistent with the Act's plain language, courts have routinely found the Florida Act to be substantive.  For instance, in *Marco Island Cable, Inc. v. Comcast Cablevision of the South, Inc.*, 509 F. Supp. 2d 1158, 1160 (M.D. Fla. 2007) (vacated in part on other grounds), the district court held that the Florida Act "**is substantive law** intended to be remedial in nature, and is to be liberally administered and construed." (emphasis added)  In *Marco Island*, Marco Island Cable sought a declaration that Comcast had violated Florida law by entering into exclusive contracts to provide services to certain condominium communities.  *Id*. at 1159.  Comcast argued that there was no case or controversy ripe for adjudication because there was no evidence that a resident of the condominium communities was denied access to other cable services or that Comcast or its customers interpreted Comcast's contracts as denying such access.  *Id*. at 1163.  The court disagreed, finding that Marco Island Cable had asserted a case or controversy and therefore had standing to proceed under the Florida Act.  *Id.* at 1164.  In reaching its decision, the court determined that because "federal jurisdiction is premised on diversity of citizenship, … Florida law governs and federal case law interpreting the federal Declaratory Judgment [Act], 28 U.S.C. § 2201 et seq. is not applicable in this case."  *Id*. at 1163.

In another recent case, *Nationwide Mutual Co. v. Ft. Myers Total Rehab Center, Inc.*, 657 F. Supp. 2d 1279 (M.D. Fla. 2009), the court rejected the insureds' argument that the Florida Act "does not provide a substantive right and therefore the Court must determine whether it has jurisdiction under 28 U.S.C. § 2201, the federal Declaratory Judgment Act."  *Id*. at 1291.  The court instead analyzed whether the insured had presented a case or controversy according to the Florida Act, stating: "The federal Declaratory Judgment Act is 'not an independent source of federal jurisdiction,' and is 'procedural only.  **The Florida Declaratory Judgment Act**, on the other hand, **is in fact substantive** and remedial in nature.  *Id*. (emphasis added) citing *Marco Island.  See also Powers v. Hartford Insurance*

6

*Co.*, 2010 WL 2889759, *3 (M.D. Fla. July 22, 2010) (citing to a decision by the Florida Supreme Court and to § 86.101, finding that § 86.101 declares that the Florida Act is substantive and remedial); *Auto-Owners Ins. Co. v. Emerald Star Casino & Resorts, Inc.*, 2009 WL 3446745 (M.D. Fla. Oct. 21, 2009) (even though action brought solely under the federal Declaratory Judgment Act, court denied insured's motion to dismiss for lack of case or controversy under the federal Act and allowed action to proceed under the Florida Act).[1]

Florida state courts, including the Florida Supreme Court, have similarly recognized the substantive nature of the Florida Act. *See Higgins v. State Farm Fire and Casualty Co.*, 894 So. 2d 5, 11, 13 (Fla. 2005) (recognizing that the Florida Act "enlarged the scope of substantive and remedial remedies") citing *Ready v. Safeway Rock Co.*, 24 So. 2d 808, 809 (Fla. 1946). *See also Reinish v. Clark*, 765 So. 2d 197, 203 (Fla. 1st DCA 2000) (holding that the Florida Act is substantive). The plain language of the Florida Act and the case law of the Florida Supreme Court recognizing the Act's substantive nature require its application here.

Furthermore, the three cases cited by the Court in support of the proposition that federal law determines whether a matter presents a justiciable case or controversy are not applicable to the matter presently before it. These cases, all from other jurisdictions, did not involve a state substantive declaratory judgment statute and therefore were brought pursuant to the federal Declaratory Judgment Act only. For example, in two opinions rendered by federal district courts in Georgia, *American Insurance Co. v. Evercare Co.*, 699 F. Supp. 2d 1355 (N.D. Ga. 2010) and *State Farm Mutual Automobile Insurance Co. v. Bates*, 542 F. Supp. 807 (N.D. Ga. 1982), the courts were determining whether a controversy existed in cases that were controlled exclusively by the federal Declaratory Judgment Act. In fact, Georgia law, unlike Florida law, does not permit insurers to bring a declaratory action

---

[1] National Union notes that some cases from this District have found, without analysis, that the Florida Act is procedural. *See, e.g.*, *Buckley Towers Condo., Inc. v. QBE Ins. Corp.*, 2008 WL 2490450, *2 n.1 (S.D. Fla. June 18, 2008); *Nirvana Condo. Ass'n, Inc. v. QBE Ins. Corp.*, 589 F. Supp. 2d 1336, 1344 n.1 (S.D. Fla. 2008); *Isola Condo. Ass'n, Inc. v. QBE Ins. Corp.*, 2008 WL 5169458, *7 n.1 (S.D. Fla. Dec. 8, 2008). These outlier cases are clearly inconsistent with the plain language of the Florida Act and the weight of authority from the Florida legislature, the Florida Supreme Court, and the Florida federal cases discussed above; are not binding; and should be disregarded. *See Fishman & Tobin, Inc. v. Tropical Shipping & Constr. Co., Ltd.*, 240 F.3d 956, 965 (11th Cir. 2001) (holding that decisions of fellow judges of the district court are not binding authority).

against their insureds. *See Bates*, 542 F. Supp. at 811 (stating that "Georgia law apparently does not allow an insurer to raise its defenses to a claim by its insured through a declaratory judgment action").

### B. The Case At Bar Presents a Ripe Controversy Under the Florida Declaratory Judgment Act

The issue to be resolved in this action—whether allegations of the underlying lawsuits fall within the plain language of the Total Pollution Exclusion of the National Union policies—is of the type contemplated by the Florida Act. According to the plain language of the Florida Act, "[i]ts purpose is to settle and to afford relief from insecurity and uncertainly with respect to rights, status, and other equitable or legal relations and is **to be liberally administered and construed**." Fla. Stat. 86.101 (emphasis added). Moreover, § 86.021 of the Florida Act, titled "Power to Construe," reads:

> **Any person claiming to be interested** or who may be in doubt about his or her rights under a … contract … **may have determined any question of construction** or validity arising under such … contract … **and obtain a declaration of rights**, status, or other equitable or legal relations thereunder.

Fla. Stat. § 86.021 (emphasis added).

Indeed, nothing in the Florida Act requires an insurer to await a final determination of an insured's liability in underlying lawsuits before the insurer can seek a declaration of its rights under insurance policies that likely will be implicated. In fact, the Florida Act states that "[a]ny declaratory judgment rendered pursuant to this chapter may be rendered by way of anticipation with respect to any act not yet done or any event which has not yet happened. . . ." Fla. Stat. § 86.051.

The language of the Florida Act, particularly § 86.021, is very broad and is consistent with the Florida legislature's directive in § 86.101 that the Act is "to be liberally administered and construed." It is beyond question that the case at bar falls within the purpose of the Florida Act. At the very least, National Union is an "interested" party who is seeking a determination concerning a "question of construction or validity arising under" the insurance policies at issue, and is seeking to "obtain a declaration of rights, status, or other equitable or legal relations thereunder." *See Powers*, 2010 WL 2889759 at *3 (holding that

"based on *Higgins*, issues involving the rights and obligations under an insurance policy come within the purposes of the declaratory judgment statutes, which [are] 'to afford relief from insecurity and uncertainty with respect to rights, status, and other equitable or legal relations"). The Florida state and federal case law supports this conclusion.

Florida courts, including the Florida Supreme Court, have consistently administered and construed the Florida Act liberally. *See Olive v. Maas*, 811 So. 2d 644, 648 (Fla. 2002) (holding that "[g]iven the repeated adherence by Florida courts to the notion that the declaratory judgment statute should be liberally construed, we conclude that Olive had standing…."). *See also Marco Island*, 509 F. Supp. 2d at 1164 (citing *Olive* and stating that "[t]he liberal construction of the Florida Declaratory Judgment Act informs the Court's decisions on standing"). This has been the longstanding rule in Florida, as evidenced in an appellate decision of almost fifty years ago discussing the primary purpose of the Florida Act:

> The primary purpose of the declaratory judgment act is to relieve litigants of the common law rule that no declaration of rights may be judicially adjudged unless a right has been violated, for the violation of which rights relief may be granted, and render practical help in ending controversies which have not reached the state where other legal relief is immediately available. [citation omitted] **Within the sphere of anticipatory and preventative justice the use of declaratory judgments should be extended, their scope kept wide and liberal, and their boundaries elastic**.

*Bell. v. Assoc. Indep., Inc.*, 143 So. 2d 904, 907-08 (Fla. 2d DCA 1962) (emphasis added).

The Florida Supreme Court has also recognized the benefits and pragmatism promoted by the Florida Act and a timely adjudication of an insurer's and insured's rights and obligations under an insurance policy. In *Higgins*, the court concluded that "it is illogical and unfair to not allow insureds and insurers to have a determination as to whether coverage exists on the basis of the facts underlying a claim against an insurance policy." *Higgins*, 894 So. 2d at 15. *See Powers*, 2010 WL 2889759 at * 3 (same). The *Higgins* court examined various sections of the Florida Act in considering whether an insurer could bring a declaratory action under an unambiguous policy even if the court must determine the

existence or nonexistence of a fact to determine the insurer's responsibility.  *See Higgins*, 894 So. 2d at 10-11.  The court stated:

> Why should an insured be placed in a position of having to have a substantial judgment against the insured without knowing whether there is coverage from a policy?  **Why should an insurer be placed in a position of either paying what it believes to be an uncovered claim or being in jeopardy of a bad faith judgment for failure to pay a claim?**  These are precisely the issues recognized by this Court in other contexts that are intended to come within the purpose of the declaratory judgment statute's "relief from insecurity and uncertainty with respect to rights, status, and other equitable or legal relations."

*Id*. at 15.  The court also adopted the proposition that "[g]enerally, an insurance carrier should be entitled to an expeditious resolution of coverage where there are not significant, countervailing considerations."  *Id*. quoting *Britamco Underwriters, Inc. v. Cent. Jersey Inv., Inc.*, 632 So. 2d 138, 141 (Fla. 4th DCA 1994).

Here, a dispute exists between National Union and Defendants as to whether coverage for the Underlying Lawsuits exists under the National Union policies, or is precluded by the Total Pollution Exclusion.  Defendants are involved in over thirty lawsuits and are likely to exhaust their underlying coverage if found liable in any number of them.[2]  Both National Union and Defendants (and the underlying claimants) will benefit from an immediate determination of their rights and duties under the National Union policies, before the underlying coverage is exhausted and the parties are uncertain as to whether National Union owes a duty to defend.  In light of the broad construction of the Florida Act and its liberal administration by the courts, National Union is entitled to a declaration of its rights and obligations under the policies at issue.[3]

---

[2]  *E.g.*, *Germano v. Taishan Gypsum Co. Ltd.*, 2:09-md-2047 (DE 2380).  In his Findings of Fact & Conclusions of Law, Judge Eldon Fallon, who is overseeing the multidistrict litigation concerning Chinese drywall, concluded that the average cost per square foot to repair the homes at issue was $86.  *Id.* at p. 57.

[3]  Though this Motion focuses on the Florida Declaratory Judgment Act, National Union respectfully disagrees with the Court's Order that this matter does not present a ripe case or controversy under the federal Declaratory Judgment Act.  Numerous federal courts have held the fact that liability of the insured may be contingent does not defeat jurisdiction.  *Assoc. Indem. Corp. v. Fairchild Indus., Inc.*, 961 F.2d 32, 35 (2d Cir. 1992) (also noting that "litigation over insurance coverage has become the paradigm for

**V.    CONCLUSION**

National Union's complaint properly alleged a justiciable controversy under 28 U.S.C § 1332 and the substantive law of Florida, including the Florida Declaratory Judgment Act, Fla. Stat. § 86.01 et seq.  For the reasons recited above, National Union moves this court to reconsider and vacate its Order of November 29, 2010, effectively reopening the case at bar, and to render a ruling on National Union's Motion for Summary Judgment on the Total Pollution Exclusion.

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1**

Pursuant to Southern District of Florida Local Rule 7.1, the undersigned certify that they have conferred with counsel for Defendants in a good faith effort to resolve the issues raised in this motion.  Defendants objects to the relief National Union seeks herein.

Respectfully submitted,

/s/ Cindy L. Ebenfeld
Cindy L. Ebenfeld, Esq.
Florida Bar No. 980579
Rick A. Piccolo, Esq.
Florida Bar No. 511330
HICKS, PORTER, EBENFELD & STEIN, P.A.
11011 Sheridan Street, Suite 104

---

asserting jurisdiction despite 'future contingencies that will determine whether a controversy ever actually becomes real'").  *See Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 681 (7th Cir. 1992) (holding that a controversy existed in a declaratory judgment action between a third party and an insurer even though no judgment had been rendered in the underlying suit between the third party and the insured).

Moreover, the cases cited by the Court for the proposition that a federal court does not have subject matter jurisdiction under the federal Declaratory Judgment Act in a matter involving the interpretation of an excess policy unless and until there is an underlying judgment against the insured are not applicable here.  These cases did not consider questions of the insurers' duties to defend, but rather concerned questions of the insurers' duties to indemnify.  *See Allstate Ins. Co. v. Employers Liab. Assurance Corp.*, 445 F.2d 1278 (5th Cir. 1971); *Provident Life & Accident Ins. Co. v. Transamerica-Occidental Life Ins. Co.*, 850 F.2d 1489 (11th Cir. 1988); *Atlanta Gas Light Co. v. Aetna Cas. and Surety Co.*, 68 F.3d 409 (11th Cir. 1995); *Ironshore Indem., Inc. v. Banyon*, No. 0:10-cv-60285 (DE41) (S.D. Fla. 2010).  *See also Am. Fid. & Cas. Co. v. Pa. Threshermen & Farmers' Mut. Cas. Ins. Co.*, 280 F.2d 453, 461 (5th Cir. 1960) (finding in a situation similar to this one—where there are no underlying judgments or settlements—that a "real and present controversy" existed as to whether the insurer was obligated to defend its insured).

                                Cooper City, Florida 33026
                                Tel: (954) 624-8700
                                Fax: (954) 624-8064
                                cebenfeld@mhickslaw.com
                                rpiccolo@mhickslaw.com
                                        - and -
                                Joseph A. Hinkhouse, Esq.
                                Richard A. Hodyl, Esq.
                                Joshua A. Boggioni, Esq.
                                HINKHOUSE WILLIAMS WALSH LLP
                                180 N. Stetson Avenue, Suite 3400
                                Chicago, Illinois 60601
                                Tel: (312) 784-5400
                                Fax: (312) 784-5499
                                jhinkhouse@hww-law.com
                                rhodyl@hww-law.com
                                jboggioni@hww-law.com
                                *Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on **December 27, 2010,** a true and correct copy of the foregoing was electronically filed with the Court using CM/ECF.  I also certify that a true and correct copy of the foregoing document is being served on the following counsel of record, via transmission of Notice of Electronic Filing generated by CM/ECF, this **27th day of December, 2010**:

R. Hugh Lumpkin, Esq.
Ver Ploeg & Lumpkin, P.A.
100 SE 2nd Street, 30th Floor
Miami, FL 33131
Tel:    305/577-3996
Fax:    305/577-3558
hlumpkin@vpl-law.com
*Attorneys for Defendants*

/s/ Cindy L. Ebenfeld

M-Recon Rule 59(e) .doc